IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRYONE B. HENDERSON, SR.;
DUNYEL JAMAAL ROUNDTREE;
and MARK WOODS, on behalf of
themselves and others similarly situated

    Plaintiffs,

v.

INFOMART, INC.,

    Defendants.

CIVIL ACTION NO.
1:14-CV-01609-SCJ-LTW

## MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

Pending before this Court are Defendant InfoMart, Inc.'s ("Defendant" or "InfoMart") Motion to Dismiss Counts I, II, and III of Plaintiffs' Complaint ("Motion to Dismiss"), and Defendant's Motion to Stay All Proceedings Pending Resolution of Defendant's Motion to Dismiss, or, in the Alternative, to Stay Discovery for Sixty Days ("Motion to Stay"). (Docket Entries [19, 48]). For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**. (Docket Entry [19]). Additionally, Defendant's Motion to Stay is **GRANTED**. (Docket Entry [48]).

AO 72A
(Rev.8/82)

## I.     MOTION TO DISMISS

### A.     Background

This case arises out of alleged violations of four separate subsections of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, et seq., by Defendant in its conduct relative to Plaintiffs Tyrone B. Henderson ("Henderson"), Dunyel Jamaal Roundtree ("Roundtree"), and Mark Woods ("Woods"), as well as alleged classes of similarly situated individuals. (See Class Complaint ("Complaint" or "Compl."), Docket Entry [1]). At issue in Defendant's Motion to Dismiss are Count I, related to Henderson, and Counts II and II, related to Roundtree. (Docket Entry [19]). Defendant does not challenge the allegations made in relation to Woods. The allegations relevant to Defendant's Motion to Dismiss are discussed below.

### 1.     Count I - Violation of 15 U.S.C. § 1681g(c)

In their first count, Plaintiffs assert a claim on behalf of Henderson pursuant to 15 U.S.C. § 1681g, alleging that after Henderson made a request for a consumer report under Subsection 1681g(a), Defendant failed to provide a written summary of Henderson's FCRA rights required by Subsection 1681g(c). (Compl. ¶ 2-3). Plaintiffs allege that after being rejected from jobs for purported errors on a consumer credit report, Henderson wrote to Defendant, which "operates as a nationwide consumer reporting agency," and requested a "copy of his file, including all inquiries made to [Defendant]." (Compl. ¶¶ 26-28; see also ¶ 76). Defendant responded to Henderson's request with a letter stating that it had not performed any background checks of

2

Henderson. (Compl. ¶ 29). Plaintiffs do not allege Defendant actually had information regarding Henderson, or any other named or putative plaintiff. (See generally, Compl.).

According to the Complaint, Defendant's response to Henderson failed to include a written summary of Henderson's rights under the FCRA as required by Section 1681g(c). Specifically, Defendant's response failed to include: (1) a written summary of Henderson's rights pursuant to Subsection 1681g(c)(2)(A); (2) a list of agencies responsible for enforcing FCRA rights pursuant to Subsection 1681g(c)(2)(C); (3) a statement that Henderson might have rights under state law pursuant to Subsection 1681g(c)(2)(D); or (4) a warning that, under Subsection 1681g(c)(2)(D), a credit reporting agency need not remove accurate derogatory information. (Compl. ¶¶ 30-33, 77, 78). Under these facts, Henderson brings a claim under Subsection 1681g(c)(2) on behalf of himself and "all natural persons . . . who requested from [Defendant] a copy of their file," and to whom Defendant failed to provide "the FCRA summary of rights" anytime during the five years before the Complaint was filed. (Compl. ¶¶ 74-78).

### 2.    Count II - Violation of 15 U.S.C. § 1681k(a)

The Complaint also asserts a claim under 15 U.S.C. § 1681k on behalf of Roundtree, alleging Defendant failed to provide Roundtree notice that it was "furnishing a report for employment purposes at the time it did so," and thereby denied Roundtree "the opportunity to address any concerns or derogatory history in the report directly" with his prospective employer. (Id.). Specifically, Plaintiffs allege that after applying for a job with WWC Cable ("WCC"), a subcontractor for Cox Enterprises ("Cox"), in

3

August 2010, Roundtree received an offer and began working with WCC on a conditional basis pending the results of a background check he "may have authorized" Cox Enterprises to obtain. (Compl. ¶¶ 34-36). Defendant purportedly provided Cox Enterprises ("Cox") with a report regarding Roundtree in Mid-August that contained "derogatory public information, including at least one criminal conviction and multiple traffic offenses." (Compl. ¶¶ 37-38). Plaintiffs, however, allege that despite reporting "public record information likely to have an adverse affect (sic) upon Roundtree's . . . employment," Defendant "failed to provide notice 'at the time'" that the information was being reported and to whom it was reported, (Compl. ¶¶ 45-46), and that "Defendant never mailed Roundtree [a] letter required by FCRA § 1681k," (Compl. ¶ 84). The Complaint does not allege that the information contained in the public record report was incomplete or not up to date, but does state that upon "[i]nformation and belief . . . Defendant did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which [would have] require[d Defendant] to actually contact the original source of [the] public records information . . . immediately before furnishing [the] report." (Compl. ¶ 47). According to the Complaint, as a result of the information contained in the report, WCC discharged Roundtree pursuant to Cox's demand. (Compl. ¶¶ 42-43). Based upon these allegations, Roundtree brings a claim under Subsection 1681k(a)(1)[1] of the FCRA on behalf of himself and "all natural persons . .

---

[1] Plaintiffs' Count II only purports to assert a claim pursuant to Section 1681k(a)(1) (see Compl., p. 14); however, the Court will consider the claim as asserted pursuant to Section 1681k(a) generally.

. who were the subject of a report sold by Defendant . . . that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment obtained directly from a source other than the court or government entity that maintains such record" and to whom Defendant failed to provide, "on the day [Defendant] furnished . . . the report, a written notice" that the report was being provided along with the name of the user of the report, anytime during the five years before the Complaint was filed. (Compl. ¶¶ 79-84).

### 3.    Count III - Violation of 15 U.S.C. § 1681b(b)(3)

Plaintiffs assert a second claim under 15 U.S.C. § 1681b(b)(3), alleging Defendant itself made an adverse employment decision based upon its own consumer report without first providing Roundtree with a copy of the report and summary of his rights. (Compl. ¶ 5). In addition to the facts alleged in relation to Count II, Henderson contends that Cox and Defendant agreed to criteria by which Defendant itself could "adjudicate" the eligibility of prospective Cox and WWC employees, utilizing information furnished in the consumer reports Defendant prepared. (Compl. ¶ 39). Plaintiffs allege Defendant used that eligibility and hiring criteria to make adverse employment decisions – including the denial of employment – based upon information contained in the consumer reports Defendant prepares at Cox's behest, but without Cox's or its subcontractors' participation in the decisions. (Compl. ¶¶ 89-90). Defendant simply informed Cox that applicants or employees were or were not eligible for employment. (Compl. ¶ 91). Plaintiffs also allege that, in Roundtree's case, upon

5

preparing a consumer report in relation to Roundtree ,on behalf of Cox, Defendant made the decision that he was not eligible to be assigned to or perform work for Cox. (Compl. ¶¶ 39-40 ("InfoMart had already adjudicated Roundtree inelligible (sic) for hire.")). Roundtree received a letter with Defendant's letterhead informing him that he was not eligible for employment as a result of the information in the consumer report prepared by Defendant. (Compl. ¶¶ 40-41). Cox demanded that WCC discharge Roundtree, and WCC did so. (Compl. ¶¶ 42-43).

According to the Complaint, despite taking the adverse employment actions described above, Defendant did not provide employees and prospective employees with the consumer reports the actions are based upon, or a notice or summary of their FCRA rights, as required under Subsection 1681b(b)(3) of the FCRA, prior to taking the actions. (Compl.  ¶¶ 92-93). In the case of Roundtree, Plaintiffs allege Roundtree "never received a letter or any other communication sent by InfoMart 'at the time' the InfoMart report was furnished." (Compl.  ¶¶ 46). Based upon these allegations, Plaintiffs bring a claim under Section 1681b(b)(3)(A)(i) and (ii) on behalf of Roundtree and "all natural persons . . . who were the subject of an InfoMart report for . . . new employment . . . who[], based in part on the contents of the report, InfoMart adversely adjudicated the 'hire or do not hire' employment decision," anytime during the five years before the Complaint was filed. (Compl. ¶ 86).

4.    Allegations Relating to Damages

Plaintiffs do not allege they suffered actual damages in relation to Counts I, II, or III. (See Compl.). Plaintiffs do contend, however, that Defendant's violations of the

6

FCRA were negligent, reckless, and/or willful. Along these lines, Plaintiffs contend:

- "Defendant knew or should have known about its legal obligations under the FCRA . . . [which] are well established," (Compl. ¶ 58);

- "Defendant has . . . substantial written materials that apprised it of its duties," (Compl. ¶ 59);

- "Defendant acted consciously in breaching its known duties . . . [or a]lternatively, Defendant acted in reckless disregard of the FCRA rights of Plaintiffs," (Compl. ¶¶ 60-61); and

- "Defendant's violations . . . were willful . . . [or, i]n the alternative . . negligent." (Compl. ¶¶ 63-64).

As a result, Plaintiffs seek statutory damages, as well as punitive damages, attorneys fees, and costs under Section 1681n of the FCRA. (Compl. ¶ 67).

### 5.    Defendant's Motion to Dismiss

Defendant moves to dismiss Counts I, II, and III of Plaintiffs' Complaint. (Docket Entry [19]). First, Defendant contends that because Plaintiffs do not allege that Defendant conducted a background check on Henderson or maintained a file containing Henderson's information – and instead allege only that Defendant informed Henderson that it had not conducted any such check – Plaintiffs cannot maintain that Defendant had an obligation to provide a summary of Henderson's FCRA rights under Subsection 1681g(c)(2). (Docket Entry [20], pp. 5-8). Second, Defendant argues that because the Complaint does not allege that Defendant failed to comply with the "strict procedures" option for keeping public record information "complete and up to date" under Subsection 1681k(a)(2), Defendant did not violate that Section when Defendant failed to notify Roundtree that it was reporting such information. (Id., pp. 8-12). Third, Defendant argues the allegations in the Complaint do not establish that consumer

7

reporting agencies may "use" consumer reports as it relates to adverse employment actions, such that they are obligated to provide notice of such actions under Subsection 1681b(b)(3). (Id., pp. 12-17). Finally, Defendant contends that even if Plaintiffs' claims under Counts I, II, and III withstand the arguments above, Plaintiffs have failed to allege either that they suffered actual damages or that Defendant's alleged violations of Sections 1681g, 1681k, or 1681g of the FCRA were willful, and therefore, Plaintiff's claims fail for an additional reason. (Id., pp. 17-21).

## B.    Legal Analysis

### 1.    Rule 12(b)(6) Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in a plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Brown v. Crawford Cnty., Ga., 960 F.2d 1002, 1010 (11th Cir. 1992). In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of the plaintiff's allegations. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005); see also Iqbal, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true"). A complaint must be dismissed if the facts as pled do not state a claim for relief that is

8

plausible on its face. See Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).

## 2.    Count I - Violation of 15 U.S.C. § 1681g(c)

The FCRA was enacted to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Consistent with this purpose, Subsection 1681g(a)(1) of the FCRA requires that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:  (1) [a]ll information in the consumer's file at the time of the request, " (the "File Disclosure"). Additionally, Subsection 1681g(c)(2) requires that a "consumer reporting agency shall provide to a consumer, with each written disclosure by the agency to the consumer under this section . . . [a] summary of rights" under the FCRA and other enumerated information (the "Rights Disclosure"). The purpose of these disclosure requirements is to "ensure that a consumer will receive a copy of that consumer's report rather than a summary of the information therein," S. Rep. No. 104-

9

184, at 41 (1995); to "allow consumers to identify inaccurate information in their credit files and correct this information," Gillespie v. Equifax Info. Servs., LLC, 484 F.3d 938, 941 (7th Cir. 2007); and "provide the consumer with an opportunity to dispute the accuracy of information in his file." Hauser v. Equifax, Inc., 602 F.2d 811, 817 (8th Cir.1979). See also, Campos v. ChoicePoint, Inc., 237 F.R.D. 478, 484 (N.D. Ga. 2006) ("[One] purpose of the FCRA is to provide consumers with a method to ascertain the accuracy of information collected and provided about them, one can argue the term 'request' should be broadly interpreted and a consumer reporting agency be required to disclose all information in its file about the consumer upon any "request" by the consumer.").

Defendant argues Subsection 1681g(c)(2)'s Rights Disclosure requirement is conditioned on the File Disclosure under Subsection 1681g(a), which is itself predicated on there being "information in the consumer's file at the time of the request." (Docket Entry [20], pp. 5-8). Defendant contends that because there is no allegation in the Complaint that Defendant had a file or information on Henderson, there could be no File Disclosure, nor any Rights Disclosure requirement. Id. Plaintiffs counter, first, that they have alleged sufficient facts to establish that Defendant maintained a file on Henderson, and second, that the FCRA's Rights Disclosure requirement does not depend on a file or information being maintained, but instead requires that any response to a request by a consumer constitutes a File Disclosure triggering the Rights Disclosure obligation. (Docket Entry [34], pp. 2-6; see also Compl. ¶ 29 ("InfoMart responded to Plaintiff Henderson's file request by disclosing that InfoMart had never performed a

10

background check on him as of that date.")).

As an initial matter, the Complaint does not allege any specific facts to support that Defendant maintained a file or information on Henderson. The FCRA defines "file" as "all of the information on that consumer recorded or retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g) (emphasis added). Plaintiffs allege only that "Defendant operates as a nationwide consumer reporting agency," and that Henderson requested that InfoMart "provide him with a copy of his file." (Compl. ¶¶ 25, 27-28). Even taking these allegations in the light most favorable to Plaintiffs, there is no allegation in the Complaint that InfoMart actually maintained any information on Henderson, or any other identifiable individual.[2] While it is possible that Defendant, as a nationwide consumer reporting agency, recorded or retained information on Henderson, Plaintiffs have not raised that speculative possibility

---

[2] Plaintiffs also confusingly appear to argue that this does not matter because a file includes information that might be included in a future consumer report. (Docket Entry [34], p. 5 (citing Cortez v. Trans Union, LLC, 617 F.3d 688, 711-12 (3d Cir. 2010)). Plaintiffs appear to suggest that this is true, even if the information was never obtained by a consumer reporting agency in the first place. To the extent made, this argument misconstrues the relevant authority on the point. While a "file" under the FCRA includes information that may be included in future reports, see 16 C.F.R. pt. 600, app. § 603, Plaintiffs simply have not alleged facts indicating that Defendant ever recorded or retained any information that could be included in future reports, which is required to satisfy the FCRA's definition of "file" under Section 1681a(g). Part of Plaintiffs confusion may lie in the fact that Section 1681g by its terms distinguishes between "files" and "consumer reports." For example, Subsection (a)(1) entitles a person to "file" information, whereas under Subsection (a)(3)(A), when a consumer reporting agency provides a "consumer report" to persons, a consumer is entitled to the "identification of each person ... that procured a consumer report." From the definitions of "file" and "consumer report" in the statute, see Section 1681a, it is clear these terms pertain to different sets of information and different records.

11

to the level of plausibility required under Iqbal and Twombly.[3]  Therefore, Plaintiffs' allegations are insufficient to suggest that Defendant maintained a file on or otherwise had information regarding Henderson.

Turning then to the question of whether the Rights Disclosure obligation can be triggered when a consumer reporting agency maintains no file or information on a consumer, this Court holds that it cannot.  Plaintiffs, without citation to authority, argue the Rights Disclosure obligation under Subsection 1681g(c)(2) is not premised on the File Disclosure under Subsection 1681g(a), and even if it were, Defendant still made a File Disclosure, based upon Plaintiffs' allegation that Defendant disclosed that it had never performed a background check on Henderson.  (Docket Entry [34], pp. 5-6).

Although the FCRA is a remedial statute to be interpreted in favor of consumers, the statute's plain language contradicts Plaintiffs' position.  The first question in interpreting a statute is "whether the [statutory] language at issue has a plain and unambiguous meaning with regard to that particular dispute."  Shotz v. City of Plantation, 344 F.3d 1161, 1167 (11th Cir. 2003) (internal quotation marks omitted). First, the Rights Disclosure under Subsection 1681g(c) is only required "with each written disclosure by the agency to the consumer under this section."  The foregoing language unambiguously refers to the File Disclosure under Subsection 1681g(a).

---

[3] Plaintiffs would have the Court read into the Complaint the allegation that Defendant has in fact recorded or retained information on Henderson.  (See Docket Entry [34], n.2.).  The Court declines to do so.  See Aldana, 416 F.3d at 1248 (unwarranted deductions of fact should not be made).  Plaintiffs have not sought to amend their Complaint to include such allegations, and the Court cannot do so for them.

12

(Emphasis **added**).  The language of Subsection 1681g(c) does not suggest that the Rights Disclosure is required upon the consumer's request for the File Disclosure, as Section 1681g(a) does.  Compare, 15 U.S.C. 1681g(a) (File Disclosure shall be made "upon request" by the consumer).  Discussion of the Rights Disclosure Requirement in case law further supports this reading.  Courts have stated that it is the File Disclosure in Section 1681g(a) that "is the 'pivotal section' regarding the disclosure of the consumer's complete file."  Taylor v. Screening Reports, Inc., 294 F.R.D. 680, 684 (N.D. Ga. 2013) (quoting Nunnally v. Equifax Info. Servs., LLC, 451 F.3d 768 (11th Cir. 2006)).  "Section 1681g(c), merely "requires that CRAs provide consumers with a 'summary of rights' each time the CRA sends the consumer a written disclosure" pursuant to Subsection 1681g(a).  Taylor, 294 F.R.D. at 684 (citing 15 U.S.C. § 1681g(c)(2)(A)) (emphasis added).  Plaintiffs state that this reading would render Subsection 1681g(c) "meaningless," but do not explain how.  To the contrary, Subsection 1681g(c)'s requirements are only meaningful in the context of an actual File Disclosure under Subsection 1681g(a) – without a file or information to disclose, there are no inaccuracies to correct and no reason for a consumer to need more instruction on how to challenge them.[4]  Thus, while the history and interpretation of the FCRA reveals

---

[4]  The Court notes that in Equifax Servs., Inc. v. Lamb, the Kentucky Court of Appeals held that because the FCRA "is a statute designed to protect the consumer, we believe that any request for information by a consumer concerning his file should require the agency to report each of the three items listed."  621 S.W.2d 28, 31 (Ky. Ct. App. 1981), cert. denied sub nom., Lamb v. Equifax Servs., Inc., 456 U.S. 927 (1982).  Lest Plaintiffs think otherwise, the court there was referring to the three types of disclosures required under Subsection 1681g(a) at that time, and not to any additional disclosure required under Subsection 1681g(c).  See Taylor, 294 F.R.D. at 684 (noting same).

13

that it was crafted to protect consumers from the transmission of inaccurate information about them, there can be no transmission when no information is ever recorded or retained by Defendant in the first place.

Next, Defendant's notice to Henderson does not constitute a File Disclosure under the statute's plain terms. Subsection 1681g(a) requires the disclosure of "[a]ll information in the consumer's file," upon the request of the consumer; it does not speak to or require any disclosure if there is no such information. As a result, a consumer reporting agency's notice that it has no information to disclose has nothing to do with Subsection 1681g(a)'s requirements; it is not a File Disclosure under the statute and cannot serve to trigger the Rights Disclosure requirement. To interpret Subsection 1681g(a) differently would fail to serve its purpose in correcting inaccurate information; if there is no information, there can be no inaccuracies to dispute. See Spector v. Equifax Info. Servs., 338 F. Supp. 2d 378, 386 (D. Conn. 2004) (citing Hauser v. Equifax, Inc., 602 F.2d 811, 817 (8th Cir. 1979)) ("The purpose of [15 U.S.C. § 1681g(a)]'s disclosure requirement is to provide the consumer with an opportunity to dispute the accuracy of information in his file.").[5]

---

[5] Along similar lines, Defendant's notice to Henderson (that it has no information) does not create a "file" or information on Henderson, obligating a File Disclosure or Rights Disclosure, as Plaintiffs suggest. The Federal Trade Commission ("FTC"), which is responsible for enforcing many of the FCRA's provisions, has provided commentary on the FCRA that limits the meaning of "file" to material that might be included in a consumer report: "The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer."  16 C.F.R. pt. 600, app. § 603; see also U.S.C. § 1681a(g).  It is not a reasonable interpretation of Subsection 1681g(a) to conclude, at this time, that a letter stating that a consumer reporting agency has no information on a consumer should have been

Accordingly, because Plaintiffs have not sufficiently alleged that Defendant ever maintained a file, recorded, or retained information about Henderson, and have not alleged that Defendant made any File Disclosure pursuant to Subsection 1681(g)(a), Henderson's cause of action pursuant to Subsection 1681(g)(c) fails to state a claim for relief, and Count I should be **DISMISSED WITHOUT PREJUDICE**.

3.   Count II - Violation of 15 U.S.C. § 1681k(a)

Section 1681k of the FCRA protects consumers in the disclosure of public records information for employment purposes. Subsection 1681k(a) states that:

> A consumer reporting agency which furnishes a consumer report for employment purposes . . . [based upon] matters of public record and [that are likely to have an adverse effect upon . . . employment shall -- (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported . . . or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

Plaintiffs assert a claim under 15 U.S.C. § 1681k on behalf of Roundtree, alleging Defendant provided a public records consumer report to which Subsection 1681k(a) is applicable ("Public Records Report"),[6] but failed to provide notice of the report at the time it was made. Defendant argues the Complaint does not sufficiently allege that

---

included in a future consumer credit report. See Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007) (noting that there must be some showing that similar information was contained "in a consumer report in the past" or that the consumer reporting agency had "plans to do so in the future" for it to be part of a consumer file). Accordingly, sending a letter stating there is no file or information on a consumer does not magically constitute the creation of a file.

[6] That is, one which uses public records information and likely to adversely affect employment.

15

Defendant failed to comply with the second option under Subsection 1681k(a)(2), and that, as a result, Plaintiffs fail to state a claim under that Subsection.

Pursuant to Section 1681k, a consumer reporting agency providing a Public Records Report is "obligated to do <u>one of two things</u>:  (1) notify the consumer contemporaneously with the transmission of the report to the user <u>or</u> (2) 'maintain strict procedures' designed to ensure the information is 'complete and up to date.'" <u>Smith v. HireRight Solutions, Inc.</u>, 711 F. Supp. 2d 426, 438 (E.D. Pa. 2010) (emphasis added) (citing <u>Dalton v. Capital Assoc. Indus.</u>, Inc., 257 F.3d 409, 417 (4th Cir. 2001)). Therefore, to establish a violation of Section 1681k(a), a Complaint must plead facts sufficient to establish that a consumer reporting agency did neither. <u>Smith</u>, 711 F. Supp. 2d at 439; <u>see also</u> <u>Moore v. First Advantage Enter. Screening Corp.</u>, No. 4:12 -CV-00792, 2013 WL 1662959, at *5-6 (N.D. Ohio Apr. 17, 2013) (holding a consumer reporting agency must "provide a consumer with notice of adverse public records information at the time it issues a report *unless it maintains strict procedures designed to ensure that the information it reports is complete and up to date*") (emphasis in original).[7]  The parties both agree that Plaintiffs have alleged facts showing that

---

[7] Plaintiffs' confusing argument that Section 1681k(a)(2) does not apply is unavailing. Plaintiffs state that "as it has been established in other litigation, and will be again in this case, [Subsection 1681k(a)(2)] simply cannot apply to a company that sells criminal records obtained with incomplete identifying information by automated process." (Docket Entry [34], pp. 6-7). Plaintiffs provide no citation or legal authority for the proposition. Instead, Plaintiffs simply rewrite the statutory language to fit their desired result. (Id., p. 6 ("The text and history of § 1681k(a) could more plainly be stated as 'If a CRA is of the type that can obtain and furnish only complete and contemporaneous public records, it may comply with § 1681k(a)(2); If not, it must comply with § 1681k(a)(1).'"). Even if Plaintiffs' explanation of the statute was meritorious, Plaintiff's have failed to plead factual allegations in relation to Count II

16

Defendant did not provide contemporaneous notification under Subsection 1681k(a)(1), and the focus is therefore on Subsection 1681k(a)(2), and whether Plaintiffs alleged facts to support a violation of that Subsection.

The Northern District of Georgia has recently provided a comprehensive explanation of what must be shown to establish a violation of Section 1681k by failure to abide by Subsection 1681k(a)(2)'s requirements. See Farmer v. Phillips Agency, Inc.. 285 F.R.D. 688, 695 (N.D. Ga. 2012). In that case, the Court concluded "that to establish a violation of the requirements of § 1681k(a)(2), a plaintiff must show that . . . the CRA failed to maintain strict procedures designed to insure that the information in that report was complete and up to date; and [that] the consumer report was either incomplete or not up to date."[8] Id. at 700. To meet the pleading requirements, a

_____

that Defendant provided records with incomplete or not up to date information, or were the "type" of consumer reporting agency incapable of providing complete or up to date information.

[8] The Court in Farmer noted further that it is not clear that Section 1681k(a)(2) "actually imposes an accuracy requirement at all. Instead, Section 1681k(a)(2) requires that a report be complete and up to date. Completeness, up to dateness, and accuracy are not necessarily synonymous." Farmer, 285 F.R.D. at 700 n.18 (citing Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1157 (11th Cir. 1991)) (emphasis added). The Court surmised that "Section 1681k(a)(2) would target the completeness aspect of accuracy, while § 1681e(b) would pinpoint the factual correctness aspect." Farmer, 285 F.R.D. at 700 n.18. As a result, Defendant's argument on reply, that Plaintiffs must allege facts establishing "actual inaccuracy" does not carry the day. (Docket Entry [37], pp. 9-10). Instead, Plaintiff's must allege that the report was incomplete or not up to date, which they do not. Id.; see also Speers v. Pre-Employ.com, Inc., 13-CV-01849-HU, 2014 WL 2611259, at *8 (D. Or. May 13, 2014) report and recommendation adopted, 3:13-CV-01849-HU, 2014 WL 3672910 (D. Or. July 23, 2014).

Additionally, in an opinion letter, the FTC stated that "we believe that the CRA complies with [Section 1681k(a)(2)] if its report is 'complete and up to date' in the sense that it includes the current public record status of each individual item reported."

17

complaint's allegations must put a defendant on notice of how the "[d]efendant allegedly engaged in the challenged conduct" or produced incomplete reports, even if the complaint does not "articulate any particular procedure or policies that [the d]efendant maintains" that fail to meet the strict procedure requirements. Smith, 711 F. Supp. 2d at 435, 439.

In this case, Plaintiffs' sole allegation pertaining to Section 1681k(a)(2) in Count II is the paragraph stating that:

> Defendant did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of [the] public records information (e.g. the Court clerk) immediately before furnishing [the] report which includes such information."[9]

(Compl. ¶ 47). Both portions of this statement misrepresent Section 1681k(a)(2). First, Section 1681k(a)(2) sets forth an option for a consumer reporting agency to follow when providing Public Records Reports, not an option to be offered to consumers themselves. Second, the FCRA does not define "strict procedures," and while it does require "heighten standards" in the collection of information, it does not require that a consumer reporting agency contact the "original source" of public records information "immediately before furnishing a report," as Plaintiffs suggest. See, e.g., Poore v. Sterling Testing Sys., Inc., 410 F. Supp. 2d 557, 571-72 (E.D. Ky. 2006). In any event,

---

1999 WL 33932137, at *1, FTC Staff Opinion Letter, Clarke W. Brinckerhoff (Dec. 16, 1999). Thus, a Public Records Report need not include a complete report of all public information, but must report fully as to the current disposition of each item.

[9] Plaintiffs also state that Section "1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case." This is plainly a legal conclusion and need not be considered.

18

this allegation provides no specific factual content plausibly suggesting that Defendant failed to follow strict procedures[10] in preparing Public Records Reports, nor that Defendant provided incomplete or not up to date Public Records Reports.[11] Accordingly, Plaintiffs' claim for violation of Subsection 1861k(a) in Count II should be **DISMISSED WITHOUT PREJUDICE**.

    4.    Count III - Violation of 15 U.S.C. § 1681b(b)(3)

Subsection 1681b(b)(3)(A) of the FCRA requires that "in using a consumer report for employment purposes, before taking any adverse action based . . . on [a consumer] report, the person intending to take such adverse action shall provide to the consumer . . . a copy of the report; and [a summary of the] rights of the consumer." Plaintiffs claim that Cox agreed with Defendant upon criteria by which Defendant itself would "adjudicate" the eligibility of current and prospective Cox and WWC employees, based upon information furnished in its consumer report. (Compl. ¶ 39). More specifically, Plaintiffs allege Defendant adjudicated Roundtree ineligible for employment using the consumer report it prepared, and sent a letter notifying him of his disqualification on behalf of Cox. (Compl. ¶¶ 39-41, 89-91). Defendant, however, allegedly did not

---

[10] Plaintiffs do not even conclusorily allege that Defendant failed to follow strict procedures; instead Plaintiff's merely imply that Defendant did not contact the "original sources" at the time Defendant furnished the information. There are undoubtedly other procedures that could be followed to comply with the statute, and Plaintiffs do not allege Defendant failed to comply with those procedures. Regardless, as noted above, Plaintiffs also fail to allege that the Public Records Reports were incomplete or not up to date.

[11] That Plaintiff seeks to submit additional factual content in its briefing is again unavailing. (See Docket Entry [34], pp. 7-8). Plaintiffs did not include such allegations in the Complaint and have not moved to amend the Complaint.

provide the consumer report the adjudication was based upon or a summary of Roundtree's FCRA rights as required by Subsection 1681b(b)(3)(A) (the "Pre-Adverse Action Notice" or the "Notice"), and, as a result, Plaintiffs contend that Defendant violated the Subsection.  (Compl ¶¶ 92-93, 95).

In Defendant's Motion to Dismiss, Defendant argues that as a consumer reporting agency, it is not a "user" of consumer report information and it cannot be liable under Subsection 1681b(b)(3).  (Docket Entry [20], pp. 12-16).  Defendant contends that "employers and prospective employers . . . [are] the only entities who can actually take employment-related adverse actions," and are therefore the only entities that can be "users" of consumer report information; therefore only employers and prospective employers may be liable under Subsection 1681b(b)(3) for failing to provide a Pre-Adverse Action Notice to a consumer.  (Id.).

In making this argument, Defendant compares Subsection 1681b(b)(3) with Subsection 1681b(b)(1), which by its terms, applies only to consumer reporting agencies.  Compare 15 U.S.C. § 1681b(b)(1), with § 1681b(b)(3).  However, contrary to Defendant's suggestion, Subsection 1681b(b)(3) is not limited by its terms to employers, but instead to those "person[s] intending to take such adverse [employment] action."  Under the FCRA, "person" includes "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity," and "adverse action" includes "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."  15 U.S.C. §§ 1681a(b) and (k)(1)(B)(ii).  Accordingly, Section

20

1681b(b)(3) does not by its owns terms limit the Pre-Adverse Action Notice obligation to employers or prospective employers, but rather to individuals or entities using consumer report information to make any decision for "employment purposes" that "adversely affects any current or prospective employee."[12] The language of the statute likewise does not exclude consumer reporting agencies from being the party making a decision that adversely affects an employee.  In addition to the employment-specific definition of "adverse action," there is also a catch-all definition of adverse action, which includes any adverse "action or determination that is made in connection with an application that was made by, or a transaction that was initiated by, any consumer . . . ." 15 U.S.C. § 1681a(k)(1)(B)(iv).  This catch-all provision even further broadens the scope of what constitutes an adverse action, since it does not include the "current or prospective employee" language of the employment-specific definition.    Thus, Defendant's textual argument fails.

Defendant also cites to three cases and some FTC guidance in support of an employer-limited interpretation of Subsection 1681b(b)(3)'s obligations. Unfortunately for Plaintiffs, none of these address the issue at hand – whether, as a legal matter, a consumer reporting agency can be a "person intending to take [an] adverse [employment] action" under Subsection 1681b(b)(3).  Instead, the cases, all decided upon summary judgment, only address as a factual matter when an adverse action was

---

[12] The statutory definition of "adverse action" also does not limit the adverse employment decision to a person or entity's own employees, but rather expands the definition to "any current or prospective employee" without regard to the identity of the employer.  15 U.S.C. § 1681a(k)(1)(B)(ii).

taken (before which a Pre-Adverse Action Notice need not have been made), not the question of what entity is capable of making an adverse action (and obligating themselves to send the Notice). The Court will nevertheless examine each in turn.

First, Defendant points out that the court in Obabueki v. Int'l Bus. Machines Corp., noted the difference between Subsections 1681b(b)(1), (2), and (3):

> [E]ach of the subsections need not, and does not, prescribe obligations for both agencies and users. The second and third subsections both affect users. *See* 15 U.S.C. §§ 1681b(b)(2), b(b)(3) (setting forth certain conditions for the procurement of and use of consumer reports). On the other hand, the first subsection, at issue here, sets forth obligations that an agency must satisfy before furnishing a consumer report.

145 F. Supp. 2d 371, 393 (S.D.N.Y. 2001) aff'd, 319 F.3d 87 (2d Cir. 2003). However, Obabueki, never addressed the question of whether a "user" could ever be a consumer reporting agency. The plaintiff in Obabueki alleged that the consumer reporting agency violated Subsection 1681b(b)(1), but did not assert claims against the agency for violations of Subsection 1681b(b)(3); that latter claim was asserted only against the prospective employer. 145 F. Supp. 2d at 378-79.[13] Instead, the court's holding in Obabueki as it relates to Subsection 1681b(b)(3) was simply that "an internal decision to rescind an offer is not an adverse action," and that a consumer does not suffer an adverse action triggering the Subsection's Pre-Adverse Action Notice requirement until such a conditional offer is in fact withdrawn – that is, when it is carried out,

---

[13] The employer sent two letters to the prospective employee: the first indicated that it intended to revoke Obabueki's provisional job offer and included a copy of the consumer report that revealed his prior conviction, and the second indicated that the job offer had been formally revoked. Obabueki, 145 F.Supp.2d at 377. The court only examined whether the employer's first letter could trigger the Notice obligations.

communicated, or otherwise takes effect.[14]  Id. at 391-92.  Thus, the court concluded,

the "formation of an intent to take an adverse action" is allowed before the Notice

obligation is triggered, otherwise the decision could never be contemplated before the

Notice must be sent Notice.[15]  Id. at 392.  The court there never suggested that a

consumer reporting agency or other third party could not take an adverse action.

Second, Defendant points to the court's statement in Lagrassa v. Jack Gaughen, LLC,

that Subsection "1681b(b)(2) . . . applies only to *users* of a report, rather than agencies

that furnish the report." No. 09-CV-0770, 2011 WL 1257371, at *2 (M.D. Pa. Mar. 30,

2011) (emphasis in original).  However, that case only addressed Subsection

1681b(b)(2), and not 1681b(b)(3).[16]  Finally, Defendant cites Javid v. SOS Int'l, LTD.,

---

[14] See also, In Re: Farmers Insurance Co., Inc. FCRA Litig., No. CIV-03-158-F, 2007 WL 4215833, 2007, at *6-7 (W.D. Okla. Nov. 29, 2007) (concluding that a group of insurance customers experienced adverse action only when their rates were actually billed at a higher premium, and not when they received a letter indicating that their insurance rates would increase at some future date).

[15] Obabueki is also distinguishable from this case because the employer made its ultimate adverse decision to revoke the offer after considering the consumer report and the applicant's response. Id. at 377.  As a result, the applicant had an opportunity to contest or explain the report, and the conditional offer had not been revoked prior to that opportunity. Id. at 392.  There are no allegations in the present case that Roundtree was afforded an opportunity to contest or explain the contents of the report Defendant utilized to adjudicate his employment status.

[16] Defendant also attempts to draw parallels between Subsections 1681b(b)(2) and 1681b(b)(3), and argue that they should apply to the same individuals and entities. (Docket Entry [20], pp. 13-14).  However, by its terms, Subsection 1681b(b)(2) relates to the "procure[ment]" of a consumer report, and not the "us[e]" of a consumer report, for the purposes of making an employment decision.  While it does not appear logical that a consumer reporting agency would "procure" from itself a consumer report as opposed to preparing one for itself, it is reasonable to find that a consumer reporting agency could make an adverse employment determination on behalf of another party "using" a consumer report that it prepared for them (or itself in the case of its own employees).  Moreover, at least one court has recognized the differing treatment of

23

which merely quotes the <u>Obabueki</u> decision for the proposition discussed above, that internal consideration of an adverse action by an employer is not sufficient to trigger the Pre-Adverse Action Notice obligation.   No. 1:12-CV-1218 JCC-TCB, 2013 WL 2286046, at *4 (E.D. Va. May 23, 2013).   <u>Javid</u> does not involve any claims against a consumer reporting agency, or facts alleging that a consumer reporting agency made the ultimate employment determinations.   <u>Id.</u>   Significantly, these cases all involved considerations or determination internal to the employer, and not conduct or communications between the employer and some other party who was responsible for making employment decisions or otherwise adjudicating employment qualifications on behalf of the employer.   There simply were no allegations or evidence in <u>Obabueki</u>, <u>Lagrassa</u>, or <u>Javid</u> suggesting that the consumer reporting agency in question was making any adverse determinations in relation to the employment of a consumer whose report it prepared, and therefore do not present a proper analogue to the factual scenario presented in this case.

For the same reasons, the FTC guidance is likewise unavailing to Defendant's argument.[17] The July 2011 report discussing Subsection 1681b(b)(3), for example, only

---

these two Subsections.   <u>Mattiaccio v. DHA Grp., Inc.</u>, No. CV 12-1249 (CKK), 2014 WL 717780, at *7, n.5 (D.D.C. Feb. 26, 2014) ("To the extent Plaintiff alleges that Defendant [] is a consumer reporting agency, Defendant [] cannot be liable under § 1681b(b)(2), which applies only to "users" of consumer reports.   Defendant [] could be liable, however, as a consumer reporting agency under § 1681b(b)(3), which has been held to apply to consumer reporting agencies.") (internal citations omitted).

[17]   While such guidance does not carry the force of law, it is "'entitled to respect' . . . but only to the extent that they are persuasive."   <u>Christensen v. Harris Cnty.</u>, 529 U.S. 576, 587 (2000) (quoting <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944))

AO 72A
(Rev.8/82)

addresses employer liability, and not the potential liability on the part of a consumer reporting agency. (See Docket Entry [20], Ex. A). The report does not acknowledge the factual scenario at play in the present case, where the consumer reporting agency is allegedly adjudicating substantive employment decisions, rather than merely sending out Notices. (Id.). In fact, the discussion in that report states that employers are liable under Subsection 1681b(b)(3) if they fail to provide Pre-Adverse Action Notices, "even where the information contained in the consumer report . . . would automatically disqualify the individual from employment or lead to the adverse action." (Id.). Contrary to Defendant's arguments, the same reasoning could apply to consumer credit reporting agencies if they are using criteria which would "automatically disqualify" an individual from employment, suggesting that they should also be liable in such circumstances.

The two staff opinion letters cited by Defendant are also unilluminating, as neither addresses if or when a consumer reporting agency may be liable under Subsection 1681b(b)(3). The first states that an employer or "any other user of consumer report information" may delegate "ministerial obligations," such as sending out Pre-Adverse Action Notices, but that the employer "or other user" will still remain liable under Subsection 1681b(b)(3). (See Docket Entry [20], Ex. B). The second only mentions that while an employer may contract with a consumer reporting agency "to perform the employer's ministerial duties under the FCRA [such as] arrang[ing] to make the disclosures, obtain[ing] written permission, and provid[ing] the notices requires," the employer remains liable for violations resulting from the performance of those

25

ministerial duties.  (See Docket Entry [20], Ex. C).  Nowhere do the opinion letters suggest that a consumer reporting agency cannot "use" consumer reports under Subsection 1681b(b)(3) when adjudicating substantive employment decisions.  Instead, the opinion letters only address the delegation of "ministerial obligations," once again suggesting that the delegation of substantive decision-making authority to a consumer reporting agency could result in liability on the agency's part.

In contrast to Defendant's argument is Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., which is directly on point to the issue presented here – whether a consumer reporting agency may be liable under Subsection 1861b(b)(3).  848 F. Supp. 2d 532 (E.D. Pa. 2012).  In Goode, the plaintiffs were prospective employees of retail employers, and alleged that the defendant, a consumer reporting agency, upon preparing a consumer report, "classifie[d] the employee[s] in accordance with adjudication scores agreed upon by" the defendant and the employers.  Id. at 534-535.  If the employees "f[ell] below a certain threshold, [the] defendant assign[ed] the[m] a noncompetitive score," and sent reports "detailing . . the adjudication[s]" to the employer.  Id. at 535. The plaintiffs in that case received  Pre-Adverse Action Notices from the defendant (though on their employers' letterhead), who disclaimed responsibility for any adverse employment action.  Id. at 535-37.  Those Notices, however, were sent after the adjudication had been made by the defendant, the consumer reporting agency.  Id.  The defendant also sent out a final adverse action letter several days later, again on the employers' letterhead.  Id.  The "[p]laintiffs argue[d] that [the] defendant took an adverse action against them when it . . . adjudicated them as noncompetitive . . . before

26

defendant sent them the pre-adverse action letters, in violation of § 1681b(b)(3)(A)."
Id. at 538.

      The Goode court determined both (1) what constituted an adverse action and (2) whether a consumer reporting agency could also be responsible for fulfilling the Pre-Adverse Action Notice requirement under Subsection 1861b(b)(3).  Id.  Citing to Adams v. National Engineering Service Corp., 620 F.Supp.2d 319, 323 (D. Conn. 2009), the  Goode court held that the furnishing of a report that adjudicated an applicant's employment status was an adverse action as defined by Subsections 1681a(k)(1)(B)(ii) and (iv), particularly when there are no allegations suggesting that the employer conducted a review of or modified the adjudication.[18]  Goode, 848 F. Supp. 2d at 538-42.  Likewise, the court in Goode held that under the language of Subsection 1861b(b)(3), "any person who takes an adverse action must comply with [the Pre-Adverse Action Notice requirements], be it a CRA, an employer, or a staffing agency . . . even though the party taking the adverse action [may] not have the ultimate authority to make the hiring decision."  Id. at 539, 542-43.  Additionally, the Goode court held even if a consumer reporting agency "adjudicate[d] employees based on a rubric set out by the [] employer," it still made the adjudications itself and took the adverse action, since "[n]othing in the [c]omplaint suggest[ed] that the [] employer [wa]s involved in analyzing the initial adjudication or any subsequent challenge to the adjudication by an employee."  Id. at 542-43.

---

[18] The court also took time to carefully and thoroughly distinguish Obabueki for many of the same reasons discussed above.

Defendant argues the Court should reject the <u>Goode</u> holding for a number of reasons.  First, Defendant contends that there the court failed to read Subsection 1681b(b)(3) in light of the prior Subsections 1681b(b)(1) and (2), and that only Subsection 1681b(b)(1) applies to consumer reporting agency.  As discussed above, the structure of the three subsections do not compel the conclusion that consumer reporting agencies cannot be liable under Subsection 1681b(b)(3).  <u>See also</u> <u>Mattiaccio v. DHA Grp., Inc.</u>, No. 12-1249, 2014 WL 717780, at *7, n.5 (D. D.C. Feb. 26, 2014) (consumer reporting agencies may be liable under Subsection 1681b(b)(3), even though they are not liable under Subsection 1681b(b)(2)).  Second, Defendant argues that an unintended and irrational result would follow if the <u>Goode</u> holding stands: that consumer reporting agencies would have to obtain certain certifications from themselves, for example, under 1681b(b)(1) and 1681e(a).  However, those Subsections only speak to "furnishing" a report, not generating a report for the consumer reporting agencies' own use.  Even if that result were superficially true, it would only happen in those circumstances when the consumer reporting agencies were themselves adjudicating employment decisions in lieu of the employer.  Moreover, such an irrational result presumably holds true now in circumstances when a consumer reporting agency utilizes its own reports for evaluating its own employees.  Regardless, Defendant does not and cannot cite to authority interpreting the FCRA that casts doubt on <u>Goode</u>'s holding, and this Court is unpersuaded that any illogical or irrational consequences result from this understanding of the statute.  Furthermore, contrary to Defendant's suggestion, multiple courts have positively cited Goode's holdings. <u>See, e.g.</u>, <u>Mattiaccio</u>, 2014 WL 717780,

28

at *7, n.5; Moore v. Rite Aid Hdqtrs Corp., No. 13-1515, 2014 WL 3735568 (E.D. Pa. July 30, 2014); Reardon v. ClosetMaid Corp., 2:08-CV-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013).   Finally, the legislative history of the FCRA and its amendments show that the it was enacted with the intent to protect the accuracy of consumer credit information and to expedite resolution of credit-related disputes. See H.R. Rep. 108–396, at 1 (2003) (amending the FCRA to "improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information"); see also TRW Inc. v. Andrews, 534 U.S. 19, 22 (2001) ("Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy."); Yang v. Government Employees Ins. Co., 146 F.3d 1320, 1322 (11th Cir. 1998) ("The FCRA seeks to promote the credit reporting industry's responsible dissemination of accurate and relevant information.").   Goode's holding serves this function of expediting the resolution of disputes by requiring consumer reporting agencies who are making employment related decisions to notify employees directly, rather than wait for the employers themselves to ministerially rubber-stamp the consumer reporting agency's adverse action.

Though not binding on this Court, the factual scenario in Goode is completely analogous to the allegations presently before the Court, and its holding is equally applicable.   As in Goode, Plaintiffs have alleged that Defendant adjudicated Roundtree's employment eligibility using criteria agreed upon between Defendant and Cox; that Defendant sent the rejection letter to Roundtree; and that neither Cox nor

29

WCC provided meaningful analysis of the adjudication or any challenge to that adjudication. The Court is therefore persuaded by the reasoning in Goode. "[A]n adverse action occurs when the decision is carried out, when it is communicated or actually takes effect, and an actor has until that time to take the necessary steps to comply with the FCRA's requirements." Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689, 703 (S.D. Ohio 2010). In this case, an adverse action was allegedly made and communicated by Defendant before any Pre-Adverse Action Notice was made, and as a result, Plaintiffs have sufficiently alleged that Defendant violated its Pre-Adverse Action Notice obligations under Subsection 1681b(b)(3).

     5.   Willfulness

In addition to its arguments above, Defendant argues Plaintiffs' claims in Counts I, II, and III separately fail because neither Henderson nor Roundtree allege they suffered any actual damages and because Plaintiffs' allegations do not show willful violations of the FCRA. (Docket Entry [20], pph. 17-19). Because this Court has recommended the dismissal of Plaintiffs' claims in Counts I and II, the undersigned will only address Defendant's argument as it pertains to Count III and the alleged violations of Subsection 1681b(b)(3).

The FCRA authorizes consumers to bring private suits for negligent and willful violations of its provisions. See Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1306 & n. 2 (11th Cir. 2009). If a violation is merely negligent, an affected consumer is entitled to actual damages and attorneys fees and costs. 15 U.S.C. § 1681o(a). If it is a willful, however, the consumer may recover either actual damages,

or statutory damages ranging from $100 to $1,000, and punitive damages as determined by the court, along with attorneys fees and costs. Id. at § 1681n(a).

If a complaint alleges only negligent violations of the FCRA, the complaint must also allege actual damages. See Taylor v. Screening Reports, Inc., 294 F.R.D. 680, 686 (N.D. Ga. 2013) (citing Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1160-61 (11th Cir. 1991) (holding that the plaintiff bears the burden of showing that the defendant's noncompliance with FCRA caused the plaintiff harm); see also Taylor v. Tenant Tracker, Inc., 710 F.3d 824, 828 (8th Cir. 2013); Wantz v. Experian Info. Solutions, 386 F.3d 829, 833 (7th Cir. 2004), abrogated on other grounds, Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 56 & n. 8 (2007); Ritchie v. N. Leasing Sys., Inc., No. 12-CV-4992 KMK, 2014 WL 1303440 (S.D.N.Y. Mar. 31, 2014; Morse v. USAA Fed. Sav. Bank, No. 12-CV381, 2012 WL 6020090, at *3 (D. Nev. Dec. 3, 2012); Nowlin v. Avis Budget Grp., No. 11-CV-511, 2011 WL 7087108, at *2 (M.D.N.C. Dec. 22, 2011); Buechler v. Keyco, Inc., No. 09-CV-2948, 2010 WL 1664226, at *2 (D. Md. Apr. 22, 2010). In this case, Plaintiffs have alleged no actual damages in relation to Count III, and as a result, for that claim to survive, there must be sufficient allegations that the violations in question were willful.

The United States Supreme Court has ruled that in order to meet the threshold under Section 1681n for recovery for "willful" violations of the FCRA, a company must act in at least "reckless disregard" of its obligations under the statute. Safeco, 551 U.S. at 69. "[A] company subject to [the] FCRA does not act in reckless disregard of it unless the [challenged] action is not only a violation under a reasonable reading of the

31

statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id.. Even if it is erroneous, if a company's reading of the statute is not objectively unreasonable, the company will not be liable for damages under Subsection 1681n(a). Id. Whether a reading is reasonable depends on the clarity of the statutory language and whether there is authoritative guidance on the issue, in particular from the FTC or the courts of appeals. Id. at 69-70.[19]

In this case, this Court finds that the Defendant's reading of Subsection 1681b(b)(3) was not objectively unreasonable. This Court's finding is based on the fact that there appears to be no binding authority in this circuit on the issue presented, the statute does not elicit an unambiguous meaning, and no authoritative guidance has been presented by the FTC or the courts of appeals. Furthermore, Plaintiffs' only argument that Defendant's reading of Subsection 1681b(b)(3) might be unreasonable is that the holding in Goode "represented the 'education' that InfoMart would have needed to understand the correct application of an otherwise uncontroversial text." (See Docket Entry [34], p. 24). Plaintiffs' argument ignores Safeco's holding. While this Court agrees with the holding in Goode, that holding is neither binding on this Court, nor is

---

[19] While courts note that willfulness is often a question of fact, those cases usually involve what a particular defendant knew at the time of the alleged violation, and not the status of the law. See Howley v. Experian Info. Solutions, Inc., 813 F. Supp. 2d 629, 641-42 (D.N.J. 2011); Edwards v. Toys R Us, 527 F. Supp. 2d 1197, 1210-13 (C.D. Cal. 2007). Here, the issue of willfulness turns on whether the law was clear at the time of the alleged violation; in such cases, the issue may be decided on a motion to dismiss. See Long v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 376 (3d Cir. 2012); Shalahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 803 (7th Cir. 2010).

it the "authoritative" guidance the Supreme Court identified for the purposes of the reasonableness determination. Moreover, the case was decided mere months before the alleged conduct, and only more recently published.[20] As a result, the Plaintiffs cannot show that Defendant's interpretation of the FCRA's text is unreasonable or that Defendant's conduct was reckless. Additionally, Plaintiffs have failed to allege that they are entitled to either actual or statutory damages. Accordingly, Plaintiffs' claims under Count III for violation of Subsection 1681b(b)(3) should be **DISMISSED WITHOUT PREJUDICE**.

## II.   **DEFENDANT'S MOTION TO STAY**

Plaintiffs originally filed their Complaint in United States District Court for the Eastern District of Virginia on January 6, 2014. (Docket Entry [3]). Defendants filed their Motion to Dismiss, Answer, and Motion to Transfer on February 27, 2014. (Docket Entry [19, 22]). A scheduling order was entered while the case was pending in the Eastern District of Virginia on February 21, 2014, which included an initial discovery deadline of June 30, 2014. (Docket Entry [18]). Prior to a ruling on the Motion to Dismiss, the case was transferred to the Northern District of Georgia on May 28, 2014. (Docket Entries [43, 45]).

The parties began discovery efforts in May 2014. (Docket Entry [48-1], Declaration of Taron K. Murakiami, ¶ 2). The parties engaged in communications regarding an extension of the current discovery deadlines and the viability of the current scheduling order in June. (Id. ¶¶ 4-6). At that time, the Plaintiffs indicated their

---

[20] Goode was not published by Westlaw until August 23, 2012.

AO 72A
(Rev.8/82)

intention to file an amended complaint. (Id.). Plaintiffs have not yet filed an amended complaint, but Defendant may be open to consenting to such a filing even at this late date. (Docket Entry [48], ¶ 15).

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order may be modified by a court for good cause shown. Likewise, under Rule 6(b)(1)(A), when an act must be done within a specified time, the court may extend that time period for good cause. The court enjoys broad discretion in deciding how best to manage the cases before it. United States v. McCutcheon, 86 F.3d 187, 190 (11th Cir. 1996). A "motion to dismiss based on failure to state a claim for relief should . . . be resolved before discovery begins." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997).

The Court finds that there is good cause to modify the current deadlines. The transfer of this case to the Northern District has impacted the viability of the scheduling order currently in place. In addition, the undersigned has recommended that Plaintiffs' claims in Counts I, II, and III be dismissed. If the District Court adopts this recommendation, the scope of discovery will be significantly altered. For good cause shown, then, the Court grants Defendant's Motion to Stay. The Court **ORDERS** that currently pending deadlines in this case are **STAYED** until the District Court rules on this Report and Recommendation. Within thirty (30) days from the date the District Court rules on this Order and Report and Recommendation, the parties are **ORDERED** to confer regarding deadlines in this case and to submit a joint proposed scheduling order. If the parties cannot agree upon a joint proposed scheduling order, the parties are

AO 72A
(Rev.8/82)

**ORDERED** to separately submit proposed orders, noting those deadlines the parties do and do not agree to.

## III.   CONCLUSION

For the reasons outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**.   Docket Entry [19].   The Court **RECOMMENDS** that Plaintiffs' claims for violations of Sections 1681g, 1681k, and 1681b of Fair Credit Reporting Act be **DISMISSED WITHOUT PREJUDICE**. Additionally, Defendant's Motion to Stay is **GRANTED**.   Docket Entry [48].

**IT IS SO ORDERED AND REPORTED AND RECOMMENDED**, this 15 day of August, 2014.


s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

35